IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAJAH TOMA ZETOUNA, <br> Petitioner | : | |
| | : | |
| v. | | CIVIL NO. 4:CV-07-CV-0716 |
| | : | |
| | | (Judge Jones) |
| THOMAS V. DURAN, *et al.,* <br> Respondents | : | (Magistrate Judge Smyser) |
| | : | |

## **MEMORANDUM**

June 20, 2007

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Najah Toma Zetouna ("Zetouna" or "Petitioner") an alien in the custody of the Bureau of Immigration and Customs Enforcement ("ICE") filed, through counsel, this petition for writ of habeas corpus or writ of mandamus on April 17, 2007. (Rec. Doc. 1).

On May 9, 2007, the Respondents filed a response to the Petition (doc. 4) and on May 16, 2007, the Petitioner filed a reply. (Rec. Doc. 5).

Thereafter, on May 29, 2007, Magistrate Judge Smyser issued a Report and Recommendation, recommending that the Petition be denied without prejudice and the matter closed. (Rec. Doc. 6). On June 6, 2007, the Petitioner filed objections

to the Magistrate Judge's report. (Rec. Doc. 7). This matter is therefore ripe for our review.

**STANDARD OF REVIEW:**

When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.3l. Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge. See id. Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

**FACTUAL BACKGROUND/PROCEDURAL HISTORY**:

Petitioner, a Catholic, is a citizen and native of Iraq. (Petition, ¶1). By a Notice to Appear dated October 30, 2002, the Petitioner was charged with being subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(C) because he had been convicted in Michigan in 1990 of a firearms offense. (Petition,

¶5).

On September 27, 2006, Immigration Judge Walter A. Durling denied the Petitioner's application for cancellation of removal for a lawful permanent resident pursuant to 8 U.S.C. § 1229b(a). (Petition, ¶6). Thereafter, Petitioner applied for relief from removal in the form of asylum which was denied by Judge Durling on February 7, 2007, however Petitioner's removal was ordered withheld with Government concurrence. (Petition, ¶7).[1] At the conclusion of the February 7, 2007 hearing, Judge Durling indicated on the record that he believed ICE had no reason to continue to detain Petitioner and retained jurisdiction to issue a bond to Petitioner in the event ICE refused to release Petitioner.

Petitioner appealed Judge Durling's September 27, 2007 denial of his application for cancellation of removal for lawful permanent resident to the Board of Immigration Appeals. (Petition, ¶10). However, on March 29, 2007, Petitioner withdrew his pending appeal before the Board of Immigration Appeals. (Petition, ¶11). The Board of Immigration Appeals returned the record to the Immigration Court in an order dated April 17, 2007. (Response, Ex. 4).

Previously and presently, ICE refuses to release Petitioner. (Petition, ¶13) On

[1] Petitioner waived any appeal for the denial of asylum ruling but retained appeal rights as they related to the denial of his application for cancellation of removal for lawful permanent resident.

March 21, 2007, Petitioner filed an "Emergency Motion for Bond and Waiver of Appearance of Respondent at any Bond Hearing on this Motion" with the York Immigration Court. (Petition, ¶14). On March 23, 2007, Judge Durling ruled that he no longer had jurisdiction to issue a bond. (Petition, ¶15). In rendering this ruling, Judge Durling indicated in a footnote that:

> That said, since the likelihood of finding an alternate country of removal is probably slim to none, which DHS must know, it is legally debatable whether the agency could automatically invoke its 90-day detention period absent a good-faith belief that it could successfully remove him. If respondent believes the agency is abusing its authority to detain him in this regard, he could seek a mandamus action in federal district court.

(Petition, Ex. 6).

The instant federal action ensued. Petitioner alleges that ICE continues to detain Petitioner despite the fact that it cannot remove Petitioner, a Catholic Iraqi with no family members from any country other than Iraq, to any country other than Iraq. Petitioner alleges that under these circumstances his detention is being continued under the pretense of removal to a country other than Iraq and is therefore in bad faith.

**DISCUSSION**:

In the report, Magistrate Judge Smyser concluded that the Petition is premature and should be dismissed without prejudice because the sixth month

presumptively reasonable post-final removal order detention period set forth in Zadvydas v. Davis, 533 U.S. 678 (2001) has yet to expire. Magistrate Judge Smyser reasoned that pursuant to Zadvydas, Petitioner's detention for at least the six month period is reasonable for ICE to attempt to find a country other than Iraq to which to remove him.

Petitioner's main objections are interrelated. He first submits that the Magistrate Judge erred in failing to address whether the Government has made good faith efforts to remove the Petitioner to a third county. Petitioner then argues that the Magistrate Judge erred in not addressing Government's failure to provide the Court with affidavits or other proof of officials detailing how the Government intends to remove Petitioner to a third country

Section 241(a)(1)(B) of the Immigration & Nationality Act (the "Act") addresses the custody of aliens who are subject to administratively final orders of removal. See Immigration & Nationality Act § 241(a), 8 U.S.C. § 1231(a)(applying to the "Detention, Release, and Removal of Aliens Ordered Removed"). Under section 241(a), detention of an alien is authorized and mandatory during a ninety-day removal period. Section 1231(a)(1)(B) provides:

The removal period begins to run on the latest of the following:

    (i)    The date the order of removal becomes

> administratively final.
>
> (ii)   If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.  At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision.  8 U.S.C. §§1231(a)(3) & (6).

In Zadvydas, the Supreme Court considered the application of section 241(a)(6) of the Act which allows for the detention of aliens after the conclusion of the removal period described in section 241(a)(1) to lawful permanent resident aliens who were deportable from the United states on account of their criminal convictions.  See Zadvydas, 533 U.S. at 682.  The Supreme Court determined that section 241(a)(6) does not constitute blanket permission for indefinite detention of such aliens beyond the removal period, and the Supreme Court thus read an implicit "reasonable time" limitation into the statute.  See Zadvydas, 533 U.S. at 682, 701.  Raising concerns about the constitutionality of a statute permitting indefinite detention of a deportable alien, the Zadvydas Court determined that the presumptive limit to a reasonable duration of detention after the removal period is six months.  See Zadvydas, 533 U.S. at 689, 701.  The Supreme Court held that

where ICE is unable to remove an alien within a six-month period, the burden rests on ICE to present sufficient evidence to rebut an alien's showing that "there is no significant likelihood of removal in the reasonably foreseeable future." See Zadvydas, 533 U.S. at 701.

The Petitioner essentially argues that the instant Petition is not premature because his detention has already exceeded a period that is reasonably necessary to secure removal, despite the fact that less than six months have elapsed since the final order of removal.[2] Petitioner asserts that ICE has failed to rebut his contention that there is no significant likelihood of removal in the reasonably foreseeable future. He further submits that ICE knows it cannot remove him to a third country and that his continued detention is in bad faith.

First we note that because the six month period has not yet run, no burden is yet affixed upon the Respondents to rebut the Petitioner's allegations that there is no likelihood of removal in the foreseeable future. Within the response, the Respondents' counsel, Assistant Untied States Attorney Nathanael J. Byerly, notes that he "has been informed that ICE has already accumulated an initial list of third

---

[2] There is some dispute over whether the Petitioner's final order of removal is February 7, 2007 or April 17, 2007. Petitioner asserts that the earlier date obtains, while the Respondents submit that the date the Board of Immigration Appeals returned the record to the Immigration Court is the controlling. For the purposes of our ruling today, it is of no moment which date controls because even using the earlier of the dates, the six month period is still ongoing.

countries and will be working with those countries in an effort to obtain a travel document for Zetouna." (Response, p. 5). Petitioner argues that this "double hearsay declaration is of no evidentiary weight at all in this Court." (Objections, ¶6). While we recognize that Petitioner is frustrated with his continued detention, this attempt to assail the credibility of a Assistant United States Attorney is baseless and unavailing. We have no reason to doubt that Attorney Byerly, as an officer of this Court, was informed of the exact information that he transmitted in the response. It is well to note that pursuant to Zadvydas, it is not until after the six month period that ICE is required to offer evidence to rebut an alien's showing of good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, yet they have already attempted to do so, which even further dismantles Petitioner's allegation that the Respondents are acting in bad faith. Petitioner's contention that the Respondents must *presently* provide the Court with affidavits or other evidence to support their attempts to remove Petitioner is simply a red herring.

**CONCLUSION**:

After consideration of the Petitioner's objections, we find that Magistrate Judge Smyser correctly concluded that Petition is premature, given that the six month presumptively reasonable detention period set forth in Zadvydas has not yet

expired. We shall adopt Magistrate Judge Smyer's report in its entirety and deny the Petition without prejudice. An appropriate Order shall issue.